In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2967

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROGER LOUGHRY, also known as MAYORROGER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cr-00132-WTL-KPF-5—**William T. Lawrence,** *Judge.*

ARGUED MAY 5, 2011—DECIDED OCTOBER 11, 2011

Before MANION, WOOD, and WILLIAMS, *Circuit Judges,*

WILLIAMS, *Circuit Judge.* Roger Loughry was convicted of
advertising, distributing, and conspiring to advertise and
distribute child pornography through an online deposi-
tory called the "Cache." Only "lascivious exhibition"
pornography, which included the exhibition of
girls' genitals, was permitted on the Cache. Images depict-
ing sexual contact or other sexually explicit material

were prohibited. Over Loughry's Federal Rule of Evidence 403 objection, the district court allowed the government to show the jury several uncharged videos depicting "hard core" pornography discovered in Loughry's home. We conclude that the district court erred in admitting the "hard core" pornography without examining it, in not explaining its reasoning under Rule 403, and in admitting the evidence even though it was highly inflammatory and had only minimal probative value. These errors were not harmless. Therefore, we reverse.

## I. BACKGROUND

This case involves defendant Roger Loughry's participation in an online depository called the "Cache." The Cache had 536 users, about 100 of whom used the site to advertise and distribute child pornography to each other and to other users. Most of the remaining users (between 400 and 450, according to the government's estimate) viewed, but did not post, child pornography. In addition to pornography, the Cache also featured online games. Loughry joined the Cache the day after it went online, on November 12, 2005, using the name "Mayorroger."

Cache participants were separated into tiers. The top tier had two administrators, "Das" and "Devil." The next tier was composed of co-administrators, which the government contends included Loughry as "Mayorroger," and two other people, "Dublhelix," and "Aurthurgery." The five administrators had access to the administrative control panel and could

admit, promote, or demote other members, as well as control content on the Cache. Lower in the hierarchy were moderators, masters, and trusted members.

The site was divided into sub-forums and topic areas. There was a non-nude gallery area and a nude gallery area, which was subdivided by ages into "18 and over nude," "13-18 nude," and "under 13 nude" categories. The Cache's rules prohibited posting any images depicting sexual contact, masturbation, penetration, boys, or men. According to several witnesses, the purpose of the Cache was to provide its members with access to child pornography consisting of the lascivious exhibition of the genitals of minor girls.

In early September 2008, law enforcement agents executed a search warrant of Loughry's home. The agents seized Loughry's computer and various CDs. The computer's primary hard drive was registered to Loughry and contained a user account under the name "Mayorroger." There were also multiple "bookmarks" or "favorites" to provide expedited access to specific pages on the Cache, including a link to the administrative control panel. The government also found files containing child pornography in the computer's Mayorroger account, in other folders within the computer, and on the CDs.

On September 9, 2008, a federal grand jury indicted Loughry on charges of advertising and conspiracy to advertise child pornography in violation of 18 U.S.C. § 2251(d)(1)(A), and of distributing and conspiracy to distribute child pornography in violation of 18 U.S.C.

§ 2252(a)(2) and 18 U.S.C. § 2252(b)(1). A superseding indictment charged sixteen counts, one of conspiracy to advertise child pornography, one of conspiracy to distribute child pornography, twelve of advertising child pornography, and two counts of distribution of child pornography. Loughry was not charged with possession of child pornography.

During trial, the government introduced evidence that Loughry responded to several postings on the Cache. For example, the link to a series called "Little Virgins" stated "by Das, on May 17, 2006, with a huge thanks to Mayorroger." Several months later, after a series of replies thanking both "Das" and "Mayorroger" for the set of images, Loughry posted, "I can't take any credit here. Das did it all. I love to give." Another example was Loughry's response to a "school passion" posting by Cache member "Loman 16," where Loughry wrote, "totally awesome, guys. Great work. Many, many thanks for these cuties." There were other similar replies from Loughry thanking other members for their postings. Loughry also posted a message saying that he was interested in images of prepubescent girls. But none of the images Loughry was charged with distributing or advertising were posted by him.

The government also introduced evidence that Loughry performed several administrative activities within the Cache. These included making "Dublhelix" a co-administrator, promoting and deleting members, and creating multiple new member accounts. One witness testified that Loughry discussed demoting

one member for failing to maintain a sufficiently active level of participation in the Cache.

During the testimony of its final witness, the government introduced several photographs and videos of child pornography discovered on Loughry's home computer. Some of the images were similar to those displayed in the Cache. But others, including videos of girls being forced to engage in sexual acts with one another and of adult males raping prepubescent girls, were more inflammatory and were prohibited by Cache "rules." The government did not charge Loughry with distributing, advertising, or possessing any of that pornography.

Over Loughry's objection, the court admitted the evidence from Loughry's home computer. The jury eventually returned a guilty verdict on all sixteen counts, and Loughry was sentenced to concurrent prison terms of 360 months on each advertising-related count and 240 months on each distribution-related count. Loughry now appeals the district court's decision to admit the "hard core" pornography the government discovered on his home computer.

## II. ANALYSIS

A district court's interpretation of the rules of evidence is reviewed de novo and its decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. Rogers*, 587 F.3d 816, 819 (7th Cir. 2009).

### A. District Court Abused its Discretion

The district court found that the pornography discovered in Loughry's home computer was admissible under Federal Rule of Evidence 414. The government's stated reason for introducing the pornography found in Loughry's home computer was that it anticipated Loughry would argue that he was "only an administrator of an adult porn game board." The government wanted to show that Loughry had a "long-standing persistent pattern of collecting [pornography]" and was not "operating by mistake or lack of knowledge" but "actually [had] the intent and motive" to join the conspiracy to distribute child pornography through the Cache. Loughry's counsel objected on relevance and Rule 403 grounds because, he argued, the government was trying to convince the jury that Loughry "is a bad guy, and so, he has got to be guilty of this other stuff as well." Loughry now argues that the district court committed several errors when it admitted the evidence, including not reviewing the "hard core" pornography found in Loughry's home computer before admitting it, not articulating its reasoning under Rule 403, and ultimately striking the wrong balance in its Rule 403 ruling.

Rule 414(a) provides that, "in a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense . . . of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a). The term "child molestation" encompasses prior or different

conduct involving the distribution, advertising, or possession of child pornography. *See* Fed. R. Evid. 414(d).

Rule 403 requires the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. "Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. R. Evid. 403, *cited approvingly in Old Chief v. United States*, 519 U.S. 172, 184-85 (1997).

Rule 414 constitutes an exception to the rule that evidence of prior bad acts is not admissible to show a defendant's propensity to commit the offense charged. *See Rogers*, 587 F.3d at 822-23 (discussing analogous Rule 413). We recognize that there has been some confusion regarding the application of Rule 403 to propensity evidence that is admissible under Rule 414. *See id.* But contrary to the government's suggestion to the district court, we have never intimated that Rule 403 applies in a "relaxed form" to admissibility determinations under Rule 414.

What we have said is that Congress has determined "that in a criminal trial for [a sexual offense], it is not improper to draw the inference that the defendant committed this sexual offense because he has a propensity to do so." *Id.* at 822. But "[e]ven if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—that is, an improper basis." *Id.* To mitigate that risk, after a Rule 414 analysis, the district court

must carefully consider whether prior bad acts evidence should be excluded pursuant to Rule 403. *Id.*

Along with several other circuits, we have stressed that "Rule 403 remains an important safeguard against the admission of prejudicial evidence" that is otherwise admissible under Rule 414. *Id.* at 823; *see also United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) ("[T]here is nothing fundamentally unfair about the allowance of propensity evidence under Rule 414 . . . [a]s long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury."); *United States v. Castillo*, 140 F.3d 874, 883 (10th Cir. 1998) ("[A]pplication of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414."). There should therefore be no question that although evidence cannot be excluded under Rule 403 simply because it tends to show that the defendant has a propensity to commit a sex offense, Rule 403 continues to rigorously apply to Rule 414 evidence.

### 1. Loughry's Rule 403 Objection Preserved

We initially dispose of the government's suggestion in its brief that Loughry did not do enough to preserve his Rule 403 objection to the "hard core" pornography found in his home. Loughry objected specifically on Rule 403 grounds to all of the government's exhibits, including those exhibits that contained "hard core" pornography. And the government

agreed during trial that Loughry had preserved his Rule 403 objection:

> [Loughry's counsel]: One last point . . . [h]ow would the Court prefer I preserve my objection?
>
> The Court: You are . . . going to object to any publication of the content of [several numbered exhibits of pornography found in Loughry's home]; are you not?
>
> [Loughry's counsel]: Among other things.
>
> . . .
>
> [Government's counsel]: [W]e will agree, Your Honor, that he objected to the admission of the child pornography contained on the computer at the residence . . . the vids [sic] plus CD . . . [and several other exhibits] to the extent that it is relevant. Without needing to continue to do so, I think he has laid that objection.
>
> [Loughry's counsel]: As long as I am covered, then that is fine.

The government's contention on appeal that Loughry did not do enough to preserve his Rule 403 objection has no merit.

### 2. Review of Evidence

Loughry contends that it was error for the district court to fail to review the videos discovered in his home before admitting them into evidence. The

court acknowledged that not having first-hand knowledge of the contents of the contested evidence was problematic. The court stated: "I guess I am at somewhat of a disadvantage not knowing exactly what items and depictions, if you will are on Government's [exhibits]." But instead of examining the photographs and videos for itself, the court relied on the government's description of the contested evidence in making its decision under Rule 403.

At least one circuit has held that a district court's failure to review challenged evidence when considering whether such evidence should be excluded under Rule 403 is error as a matter of law. *See United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) (en banc) ("[W]e hold as a matter of law that a court does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate *all* that it must weigh [referring to stories of adults engaging in sexual acts with children found on the defendant's computer]. Relying only on the descriptions of adversary counsel is insufficient to ensure that a defendant receives due process and fair trial to which he is entitled under our Constitution.") (emphasis in original).

Our cases also emphasize that a district court, in exercising its discretion under Rule 403, must carefully analyze and assess the prejudicial effect of challenged evidence. *United States v. Williams*, 216 F.3d 611, 614-15 (7th Cir. 2000) (noting that the district court "engaged in a careful analysis of the evidence the government

proffered"); *United States v. Asher*, 178 F.3d 486, 491-92 (7th Cir. 1999) (explaining, in response to the defendant's argument that the district court "merely conducted a superficial review" of the challenged evidence, that the court "took great care to analyze each piece of proffered evidence . . . and clearly articulated its reasoning for admitting certain evidence and refusing other evidence"); *United States v. Liefer*, 778 F.2d 1236, 1241 (7th Cir. 1985) ("The trial court must carefully assess all evidence offered by the government . . . to ensure . . . [that it] has probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant."); *United States v. Brown*, 688 F.2d 1112, 1117 (7th Cir. 1982) (explaining that, contrary to the defendant's contention that the trial judge permitted "the wholesale admission" of challenged evidence, the "record show[ed] that each piece of proffered evidence was carefully analyzed and admitted only when it was found to be relevant").

There may be cases where the probative value of the evidence is so minimal that it will be obvious to the court that the potential prejudice to the defendant substantially outweighs any probative value the evidence might have. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.") (citation omitted). The safest course, however, is for the court to review the contested evidence for itself. In this case, relying on

the parties' descriptions was insufficient. Few, if any, details were provided to the court when it was deciding whether to admit the evidence. The government's only description of the various challenged exhibits was that some of them depicted pornography that was similar to that on the Cache and that others depicted "hard core" pornography.[1] Based on that vague description, the court could not have properly weighed the prejudicial impact of the challenged evidence against whatever probative value the court believed the evidence had.

Contrary to the government's contention at oral argument, the slightly more detailed narrative description provided by the government's witness before the videos were shown to the jury (and after the court had already decided to admit the evidence) did not suffice either. For example, the government's witness stated that one of the videos depicted "[an] adult male performing a sex act on [a] female minor." That explanation does not tell the court which acts are shown in the video. While all depictions of an adult engaging in sexual acts with a young child are bound to be repulsive, the impact on the jury will depend upon the nature and severity of the acts depicted.

---

[1] The government told the court: "[Loughry] defined child pornography as hard core stuff, sex acts. Well, guess what? He has that stuff too. We need to be able to show that he has stuff even he defines is illegal, because we have hard core videos that are child pornography under his definition."

The challenged videos include the kind of highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment, regardless of whether the defendant committed the charged crime. Given the inflammatory nature of the evidence, the district court needed to know what was in the photographs and videos in order for it to properly exercise its discretion under Rule 403. Without looking at the videos for itself, the court could not have fully assessed the potential prejudice to Loughry and weighed it against the evidence's probative value. *See Curtin*, 489 F.3d at 958 ("One cannot evaluate in a Rule 403 context what one has not seen or read."). We therefore hold that, in light of the evidence in this case, the district court abused its discretion under Rule 403 when it failed to review the challenged videos before they were admitted in evidence.

### 3. Inadequacy of Explanation

The district court also erred in failing to explain how it balanced the Rule 403 factors. During trial, the court explained its decision not to exclude the evidence under Rule 403 as follows: "[t]he Court does look at the balancing test under 403 and finds that even under that, [the challenged exhibits] indeed [come] in." The court later memorialized its decision in a written order, but did not offer any additional explanation, stating only: "the Court conducted the Rule 403 balancing test and concluded that the probative

value of the Government's evidence was not substantially outweighed by the danger of unfair recitation."

A pro-forma recitation of the Rule 403 balancing test does not allow an appellate court to conduct a proper review of the district court's analysis. In *United States v. Ciesiolka*, we held that a district court erred when it failed to articulate its reasoning in considering a Rule 403 challenge. 614 F.3d 347, 357 (7th Cir. 2010). We said:

> [T]he district court abused its discretion in failing to propound reasons for its conclusion that the probative value of the [disputed evidence] was not substantially outweighed by the risk of unfair prejudice. We have reviewed the transcript . . . but could find no portion within it where the court explained its bare-bones conclusion that "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."

*Id.* Here, similarly, the court erred in not explaining why it believed that the probative value of the challenged exhibits was not outweighed by the risk of unfair prejudice. *See id.*

### 4. Probative Value Substantially Outweighed by Risk of Unfair Prejudice

Loughry also contends that the district court substantively erred in finding that the challenged evidence's probative value was not substantially outweighed by the risk of unfair prejudice. Loughry concedes that

the pornography found in his home had some probative value. The government explained to the court that it anticipated Loughry would claim that he was only interested in the adult pornography displayed in the Cache. We agree that Loughry's possession of a personal collection of child pornography in his home was relevant to show that his real purpose for joining the Cache was to access child pornography and not adult pornography. *Rogers*, 587 F.3d at 821 (explaining in the context of analogous Rule 413 that, "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children.") (internal quotation marks and citation omitted).

However, as Loughry points out, the probative value of the pornography found in his home was somewhat reduced because the government charged him with distribution, and not possession, of child pornography. That Loughry joined the Cache to access child pornography only weakly supports the inference that he intended to also distribute that pornography. This conclusion is underscored by the fact that only 100 of the 536 users of the Cache ever advertised or distributed child pornography. Moreover, none of the images that Loughry was charged with distributing were posted by him, and Loughry was not accused of distributing or posting any of the pornography found in his home.

The probative value of the "hard core" child pornography, in particular, was further diminished because it was

unlike the pornography that was displayed in the Cache. *Cf. United States v. Lloyd*, 71 F.3d 1256, 1264 (7th Cir. 1995) ("[W]hen evidence is offered to prove intent, the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent . . . .") (quoting *United States v. York*, 933 F.2d 1343, 1351 (7th Cir. 1991); *see United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998) (noting that "the similarity of the prior acts" to the acts at issue in the case is a factor to be considered in determining their probative value). The scope of the conspiracy in this case was limited to the distribution of child pornography found in the Cache. Since the Cache had rules specifically banning "hard core" pornography and the government does not suggest that these rules were violated, Loughry's possession of such pornography was only marginally, if at all, relevant to whether he intended to join a conspiracy to distribute the kind of pornography displayed in the Cache.

During trial, the government explained to the judge that Loughry had stated that he would leave other boards when he realized that they contained "hard core" pornography. So, the government argued, it wanted to show that Loughry also possessed "hard core" pornography because "we need to be able to show he has stuff even he defines as illegal." But Loughry never made this argument at trial. Loughry's statement, made at the time of his arrest, was that "his only function on the Cache was banning people for posting child pornography." Loughry also told a government agent in response to the question, "How do you define 'child pornography'?"

that he thought child pornography consisted of "images of young kids, male and female, naked, doing sexual acts, under the age of 18." The jury heard those statements only because the government introduced them over Loughry's objection.

For the government to tell the jury about Loughry's statements over his objection and then argue that the "hard core" pornography was necessary to rebut those statements appears to be nothing more than a backdoor attempt to bring in the uncharged "hard core" child pornography by manufacturing a relevant purpose for it. Even taking the government at its word, it did not need the "hard core" pornography because the "lascivious exhibition" pornography Loughry was charged with distributing is plainly illegal. Loughry did not attempt to argue otherwise to the jury. Loughry's "personal" definition of "child pornography" simply had no bearing on the case. If the government wanted to hold Loughry accountable for possessing "hard core" child pornography, then it should have charged him with possession of the videos and photographs it discovered in his home, instead of trying to bring in that evidence in its case for distribution of the "lascivious exhibition" pornography found in the Cache.

The minimal probative value of the "hard core" pornography was further reduced because the government had available to it a substantial amount of pornography from Loughry's home that was similar to the "lascivious exhibition" pornography Loughry was charged with distributing. *See Old Chief v. United States*, 519 U.S.

172, 182-84 (1997) (availability of other means of proof is an appropriate factor to consider in determining the relevance of an item of evidence).

In contrast, the risk of unfair prejudice to Loughry from the admission of the "hard core" pornography was substantial. Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence. *See Gonzalez-Flores*, 418 F.3d at 1098. The "hard core" video excerpts shown to the jury in this case displayed men raping and ejaculating in the genitals of prepubescent girls, as well as young girls engaging in sexual acts with each other. Such displays have a strong tendency to produce intense disgust. *See Curtin*, 489 F.3d at 964 (Kleinfeld, J., concurring) ("Perverse sexual fantasies generate . . . intense disgust."). The highly disturbing content of the videos would unquestionably have made Loughry appear more despicable to the jury than the "lascivious exhibition" pornography that Loughry was charged with distributing. *See id.* at 957 (stories of child engaging in oral copulation and masturbation with dog were "dangerously prejudicial"); *United States v. Grimes*, 244 F.3d 375, 384-85 (5th Cir. 2001) (introduction of narratives of violent rape involving young girls was unfairly prejudicial because the defendant had been charged only with possessing non-violent "lascivious exhibition" child pornography and the government had other "lascivious exhibition" pornography it could have used); *United States v. Merino-Balderrama*, 146 F.3d 758, 763 (9th Cir. 1998) (allowing the jury to

view more than ten minutes of a film of children engaged in graphic sexual conduct with other children and with adults was unfairly prejudicial given that the defendant stipulated to the movie's contents and the government could have shown the jury the movie's cover); *United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993) (admission of testimony about videos depicting people "engaging in bestiality and sadomasochism" created "disgust and antagonism" toward the defendant and resulted in "overwhelming prejudice" against him).

Further increasing the risk of prejudice to Loughry, the government introduced the "hard core" pornography during the testimony of its final witness, shortly before the jury was excused to deliberate. The jury therefore entered its deliberations under the emotional impact of the uncharged videos, which were much worse than anything in the Cache. Given the highly inflammatory content of the "hard core" pornography in comparison to its slight probative value, we find that the district court abused its discretion in concluding that its probative value was not substantially outweighed by the risk of unfair prejudice.

### B. Admission of "Hard Core" Pornography Not Harmless Error

"The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." *United States v. Blanchard*, 542 F.3d 1133, 1151 (7th Cir. 2008) (quoting *United States*

*v. Emerson*, 501 F.3d 804, 813 (7th Cir. 2007)). "An error is harmless if the untainted incriminating evidence is overwhelming." *United States v. Macey*, 8 F.3d 462, 467 (7th Cir. 1993) (quoting *United States v. Manganellis*, 864 F.2d 528, 539 (7th Cir. 1988)).

We recently stated that "a [district court's] 'perfunctory' consideration of [the Rule 403 test] . . . may in itself be grounds for reversal." *Ciesiolka*, 614 F.3d at 357 (discussing the Rule 403 prong of Rule 404(b)). And although a limiting instruction may in certain cases cure the prejudice to a defendant, *see id.* at 358, in this case neither party asked for an instruction when the objectionable videos were introduced, and the district court did not provide one. The court gave a limiting instruction during its charge to the jury, but that instruction was boilerplate and did not remind the jury that it could convict only for the offenses charged in the indictment. In light of the highly prejudicial nature of the "hard core" pornography and its minimal probative value, we cannot conclude that the prejudice to Loughry was cured by a single, bare bones instruction. *See id.* at 358-59 (prejudice not cured by single boilerplate limiting instruction).

Further, while there may have been enough evidence to convict Loughry, the evidence was far from "overwhelming," as the government contends. The government obtained a lot of evidence from the Cache, including several written posts from Loughry thanking other members for posting images of child pornography. Even so, the government could not identify a single

image of child pornography actually posted by Loughry. Since only about 100 of the Cache's 536 members actually advertised or distributed child pornography, the jury could have concluded that Loughry merely downloaded pornography posted by others. And while Loughry's status as an administrator of the Cache helps to suggest that he also intended to distribute child pornography, the government does not argue that being an administrator on such a site necessarily means that a person is guilty of distributing or advertising child pornography or of conspiring to do so. In light of the nature of the government's case and the highly inflammatory nature of the "hard core" pornography, the admission of the "hard core" pornography was not harmless.

### III. CONCLUSION

The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.