In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1385

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROGER LOUGHRY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:08-cr-00132 — **Sarah Evans Barker**, *Judge.*

ARGUED OCTOBER 28, 2013 — DECIDED DECEMBER 18, 2013

Before POSNER, WILLIAMS, and HAMILTON, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. This is Roger Loughry's second
visit to the Seventh Circuit. In his first appeal, we reversed
his convictions for various child pornography offenses be-
cause the district court erred in admitting certain "hard
core" child pornography videos found on Loughry's com-
puter. *United States v. Loughry* ("*Loughry I*"), 660 F.3d 965,
973-75 (7th Cir. 2011). Following our decision, the govern-
ment re-tried Loughry without introducing the unduly prej-

udicial videos at issue in *Loughry I.* At the conclusion of his second trial, Loughry was again convicted of sixteen child pornography offenses.

Loughry contends that his most recent convictions should be reversed because the district court sent to the jury room a binder containing properly admitted evidence of child pornography collected from his residence. According to Loughry, the evidence recovered from his home was simply too prejudicial for jurors to examine during their deliberations. While there may be some special circumstances in which a district court would abuse its discretion by failing to exclude properly admitted evidence from the jury room on this basis, Loughry's case does not fit the bill. The challenged exhibit was not unfairly prejudicial because the images and videos from Loughry's personal collection were highly probative of his identity as the internet user "Mayorroger" who advertised and distributed child pornography on a site called "the Cache." The similarities between Loughry's own child pornography and that found on the Cache made Loughry's personal collection highly probative and justified the court's decision to allow jurors to inspect it during deliberations. We affirm.

## I. BACKGROUND

In 2007, United States Postal Inspection Service ("USPIS") inspectors discovered that an internet bulletin board site called "the Cache" was providing users with access to images and videos depicting child pornography. After obtaining a search warrant, USPIS inspectors seized the Cache's contents and began looking into the activities and identities of the site's administrators. Investigators learned that a user named "Das"—later determined to be Delwyn Savigar—was one of

the Cache's two head administrators. Below Savigar on the Cache's organizational chart were three co-administrators. USPIS's investigation revealed that one co-administrator, a user named "Mayorroger," was Loughry. As a co-administrator, Loughry managed content, added members, and deleted other Cache members who may have been compromised by law enforcement.

The Cache was organized as a collection of topic areas. One such area, the "LS and BD Galleries," contained child pornography images downloaded from a pair of (now defunct) commercial child pornography websites, Lolita Studios ("LS") and Branded Dolls ("BD"). In May 2006, the head administrator of the Cache, "Das," or Savigar, posted a series of child pornography images entitled "Little Virgins" in the "LS and BD Galleries" area. In a caption accompanying his post, Savigar wrote, "Now open with a huge thanks to Mayorroger." Months later, "Mayorroger," or Loughry, replied to Savigar's initial post, "I can't take any credit here. Das did it all. I love to give."

In late 2008, federal law enforcement agents executed a search warrant of Loughry's residence and seized his computer and various compact discs. Loughry's hard drive and compact discs contained images and videos similar to those found on the Cache. For example, one video on Loughry's hard drive was from Lolita Studios, the same defunct child pornography site whose images populated the "LS and BD Galleries" area of the Cache. Moreover, the computer's hard drive was registered to Loughry and contained a user account under the name "Mayorroger." Agents also discovered bookmarks on the computer that provided quick access to

specific pages on the Cache including its administrator con-
trol panel.

Loughry was ultimately indicted on twelve charges of
advertising child pornography, two counts of distribution of
child pornography, one count of conspiracy to advertise
child pornography, and one count of conspiracy to distribute
child pornography. After a jury trial, Loughry was convicted
on all sixteen counts. On appeal, we reversed his convictions
because the district court erred in admitting certain videos
found on Loughry's computer which depicted "hard core"
child pornography. *See Loughry I*, 660 F.3d at 973-75. We rea-
soned that the probative value of the hard core child pornog-
raphy found on the videos was slight "because it was unlike
the pornography that was displayed in the Cache." *Id.* at 973.
In light of "the highly inflammatory content of the 'hard
core' pornography in comparison to its slight probative val-
ue," we concluded that the district court abused its discre-
tion in concluding that the videos were admissible under
Federal Rule of Evidence 403. *Id.* at 974.

For Loughry's second trial, the government did not at-
tempt to introduce the hard core child pornography videos
into evidence. Instead, the government only sought to pre-
sent other types of images and videos from Loughry's resi-
dence that were similar to the images he was charged with
advertising and distributing through the Cache. At trial, the
district court ruled that the images were admissible under
Federal Rules of Evidence 404(b) and 414. After noting that it
had reviewed all of the images, the court concluded that
they were "very similar to the images … that w[ere] distrib-
uted by the co-conspirators, including the defendant, in con-
junction with The Cache bulletin board." With respect to its

Rule 404(b) ruling, the court reasoned that the evidence was probative of "the identity of defendant [as] Mayorroger," the user who advertised and distributed child pornography on the Cache. Moreover, the court concluded that Rule 403 did not require the exclusion of the evidence from Loughry's residence. Given the similarity between Loughry's personal collection and the images commonly distributed on the Cache, the court ruled that the materials from Loughry's home had a great deal of probative value that outweighed any danger of unfair prejudice.

At the conclusion of the trial, the district court sent all admitted evidence, including the child pornography from Loughry's home, into the jury room during deliberations. Loughry objected to placing the evidence in the jury room "because of the inflammatory nature of the evidence … [I]t's subject to misuse and abuse by sending it back to the jury room." The district court overruled the objection:

> Okay. I hear your objection, but that's the nature of the case. It's the res gestae. It is the evidence of the offense, and the jury has to review it; it has to be able to review it. They'll have to decide how much they can take, I guess, personally, but they have to have access to it.

Following the court's ruling, the court provided jurors with an exhibit binder of child pornography images collected from Loughry's residence for use during deliberations. The images (as well as still shots from some of the videos) were assembled in a red binder in order to distinguish them from the white binders containing images found on the Cache.

After deliberating for approximately three hours, the jury found Loughry guilty of all sixteen charges. Loughry now appeals.

## II. ANALYSIS

Loughry argues that the district court erred by sending the child pornography found in Loughry's residence into the jury room during deliberations. Loughry has not asserted that the trial court improperly admitted into evidence the child pornography images recovered during the search of his home under Federal Rules of Evidence 403, 404(b) or 414. Loughry's sole challenge relates to the district court's decision to send this evidence to the jury room.

"Generally, it is within the trial court's discretion to determine which exhibits are provided to the jury during deliberations; we review this decision only for a clear abuse of discretion." *Deicher v. City of Evansville*, 545 F.3d 537, 542 (7th Cir. 2008). "We defer to the district court's handling of exhibits admitted into evidence but must ensure that the district court has exercised its discretion in a reasonable manner." *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 705 (7th Cir. 2013) (internal quotation marks omitted). "If a party argues that properly admitted exhibits had some sort of improper influence on the jury, reversal also requires a showing of prejudice." *Id.*

As Loughry tells it, the district court abused its discretion by allowing jurors to view the red binder of images from his home because the exhibit posed too great a danger of prejudice. The depictions of young girls engaging in sexually explicit conduct found on his computer would, Loughry argues, inflame jurors' emotions and preclude them from ra-

tionally evaluating Loughry's guilt. *See generally Old Chief v. United States*, 519 U.S. 172, 180 (1997) (defining unfair prejudice as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

We recognize that jurors are generally entitled to examine exhibits that are properly admitted into evidence. *United States v. Carrillo-Figueroa*, 34 F.3d 33, 39 n.5 (1st Cir. 1994); *United States v. DeCoito*, 764 F.2d 690, 695 (9th Cir. 1985); *United States v. Parker*, 491 F.2d 517, 521 (8th Cir. 1973); *Dallago v. United States*, 427 F.2d 546, 553 (D.C. Cir. 1969); *but see Deicher*, 545 F.3d at 543-44 (holding that district court abused its discretion in refusing to send properly admitted exhibit to jury during deliberations in response to request from plaintiff). But the court need not always provide the jury with every exhibit received into evidence. In certain situations, the district court may exercise its discretionary authority over the jury room to exclude even properly admitted exhibits. Exclusion may be justified for a number of reasons. For example, judges can prevent deliberating jurors from viewing "exhibits that neither party has relied on, that have no relevance to any of the issues central to the case, or that are cumulative, prejudicial, confusing, or misleading." *Deicher*, 545 F.3d at 542; *see, e.g.*, *United States v. Gross*, 451 F.2d 1355, 1358-59 (7th Cir. 1971) (affirming district court's decision to deny defendant's request to send portion of booklet containing "a mass of conflicting ordinances and statutes which bore no relevancy whatever to the issues being tried"). When deciding whether an admitted exhibit should go to the jury room, the court may weigh its probative value "against possible prejudice that may result if the exhibits are sent to the jury." *Parker*, 491 F.2d at 521; *see generally United States v. Pet-*

*ty*, 132 F.3d 373, 379 (7th Cir. 1997) (noting that decision to send prosecution "evidence into the jury room can reinforce its harmful effect on the defendant's case.").

Although Loughry makes valid points concerning the prejudicial effect of the child pornography from his home, we see no abuse of discretion in allowing the jury to view this evidence during deliberations. "That evidence may be highly prejudicial does not compel its exclusion; the evidence must be *unfairly* prejudicial." *United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011). To determine whether an exhibit is unfairly prejudicial, we use "a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012). The evidence recovered from Loughry's home possessed a great deal of probative value. Loughry's home computer contained images and videos that had many of the same properties as those found on the Cache. This similarity was strong evidence of Loughry's identity as the Cache user "Mayorroger" who advertised and distributed child pornography on the site. For example, one of the videos from Loughry's stash was from a child pornography site called Lolita Studios. This was the same site whose images populated the "LS [for Lolita Studios] and BD Galleries" area of the Cache. It was in this area that Savigar posted a series of child pornography images and credited Mayorroger for his help in distributing the images. Given the highly probative nature of the evidence, the district court acted within its discretion in concluding that the risk of prejudice to Loughry did not warrant its exclusion from the jury room.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.