# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0396, <u>State of New Hampshire v. Michael Bates</u>, the court on November 18, 2020, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Michael Bates, appeals his conviction following a jury trial on one count of securities fraud. <u>See</u> RSA 421-B:5-501(a)(2) (2015); RSA 421-B:3, I(b) (Supp. 2015) (repealed 2016).[1] On appeal, he challenges: (1) the sufficiency of the evidence to support his conviction; (2) the trial court's admission of a transcript of an interview with the defendant; and (3) the trial court's admission of evidence pertaining to a prior securities fraud investigation and settlement agreement. We affirm.

The jury could have found the following facts. In 2013, the victim became acquainted with the defendant, who coached the victim's son's basketball team. The defendant and the victim had a friendly relationship. On at least one occasion, the victim, who owns an air conditioning and heating company, serviced furnaces at the defendant's home and business.

On October 21, 2015, the victim and the defendant saw each other at a local retail store, where they both happened to be shopping that day. The defendant was shopping for items to sell through his company, which primarily involved purchasing products and re-selling them online. The defendant and the victim had a brief discussion in which he told the victim "all about his business and how much money he was making."

Later that day, the victim received a text message from the defendant with an offer to invest in his company, stating, "we are taking one more silent capital partner / $50k[.] [I]f you have $15/$25/$40 I'll let you buy in." The defendant represented that the company would be bringing in $500,000 to $600,000 in online sales by January 2016, and that, if the victim invested $50,000, he would receive dividend checks of $25,000 to $40,000 per month in twelve months. The victim, believing that the "silent capital partner" referred to him, told the defendant that he was "def[initely] interested." Although the

---

[1] The legislature repealed and replaced RSA 421-B:3 with RSA 421-B:5-501, effective January 2016. <u>See</u> Laws 2015, 273:1, :28. The charged activity spanned from October 1, 2015, to March 1, 2016, but the relevant statutory language in the two statutes is identical.

victim had never owned a membership interest or stock in any company, he was under the impression that the defendant "had a couple businesses and . . . was making good money," and thus found the offer enticing. The victim based his assessment of the defendant's financial success upon his observations that the defendant and his wife owned nice cars, had a large house, and dressed nicely.

During this time, the defendant was in settlement negotiations with the New Hampshire Bureau of Securities Regulation (BSR), which had found, following an investigation, that he had committed civil securities fraud in connection with an unrelated sale of securities to two investors. The defendant did not disclose the investigation when he made the investment offer to the victim.

On October 23, the defendant again texted the victim inquiring about his commitment and the amount he sought to invest. The victim replied that he was "def[initely] on board." Later that day, the defendant informed the victim by text message that he had created a business e-mail address for him and drafted a contract. He further stated, "To make it clean / I fronted your $50 . . . [s]o as of tomorrow you are all in." The victim took this statement to mean that the defendant had invested $50,000 on the victim's behalf, which the victim wanted to pay as soon as possible so he could begin receiving a return on his investment.

The defendant and the victim signed a one-page investment contract on October 24, and the victim made his first payment in the amount of $20,000 on October 26, by check made out to "TSG LLC," the name of the defendant's company. On October 30, the victim made a subsequent payment of $5,000.

On November 2, the defendant asked the victim, by text message, when he planned to make his next payment, and indicated that he would inform his bookkeeper. The victim responded that he would have the next payment in a couple of weeks. On November 11, the defendant told the victim that "Karen (bookkeeper) asked what the payment plan is," and that she was "by the book." The victim told the defendant that he would most likely pay the defendant $5,000 to $10,000 per month. On November 26 and December 7, the victim made payments of $5,000 and $2,500, respectively.

The defendant had multiple bank accounts, including personal accounts in his name and accounts in the names of various entities that he managed or in which he had the sole signing authority. When he received the victim's checks, the defendant did not consistently deposit the checks in the company account, but rather deposited them into multiple accounts. He also frequently transferred money between the accounts. As a result, the victim's money became commingled with other funds, which the defendant withdrew or spent on expenses unrelated to the company. For example, on October 30, the

defendant paid $2,000 — as part of a private settlement agreement with an individual who had invested in a Florida property owned by the defendant (the Florida settlement) — from the same account into which he had deposited the victim's first two checks.

On December 8, the defendant informed the victim by text message that he told "[T]ony [the] bookkeeper" that the victim would be fine with a payment schedule of $10,000 on January 28 and $5,000 on February 28. He added, "I just want you done before March [be]cause that's when we [are] doing the buy in from [an] investor." The victim responded that the schedule "should be fine." On January 21, 2016, the victim made a payment of $5,000. Approximately two days later, the defendant entered into a settlement agreement with the BSR for $50,000.

On February 17, the defendant asked the victim about his upcoming $10,000 payment, noting that he had to "submit paperwork" before March 1. On February 26, the victim made a payment of $10,000. On February 29, after the defendant deposited the victim's February 26 check, the defendant provided a check from the same account to the BSR in an amount of $10,000 as payment toward the amount he owed under the settlement agreement.

Throughout this period, the defendant and the victim communicated frequently and, on occasion, the victim met with the defendant to assist him with purchases and product development. The victim continued to believe that the defendant was "making a lot of money" and that the business "was on the up and up." However, despite his investment, the victim never received any payments from the company in return. Eventually, in June, the victim learned from the defendant's wife that the defendant was not being truthful with him. The victim subsequently met with the defendant, who showed him that the company had only $19,000 in its bank account. The victim demanded that the defendant return his money, which the defendant failed to do.

In August 2016, the BSR received an anonymous tip that the defendant had defrauded the victim. The BSR initiated an investigation, and in January 2017, BSR attorneys conducted an interview with the defendant. During the interview, the defendant admitted that there were no other silent capital partners in the business at the time of his investment offer to the victim, he had not fronted the victim $50,000, he did not have a bookkeeper during the time that the victim invested in the company, and no investor had committed to buy into the company in March 2016.

The defendant was indicted on one count of theft by deception, see RSA 637:4 (2016), and two counts of securities fraud, see RSA 421-B:3, I(b). One count of securities fraud alleged that he purposely omitted the material fact that he was under investigation by the BSR when he proposed an investment opportunity to the victim. The other count of securities fraud alleged that the

3

defendant purposely made at least one of four untrue statements of material fact in connection with his investment offer: (1) there was at least one other silent partner involved in the investment; (2) he had "fronted" the victim's initial investment; (3) his bookkeeper had inquired about the timing of the victim's remaining investment payments; and (4) the victim needed to complete his investment by March before a "buy in" occurred with another investor.

Prior to trial, the State moved to admit evidence of the prior BSR investigation, arguing that it was intrinsic to the crimes charged or, alternatively, evidence of motive, absence of mistake, and knowledge. The trial court granted the motion over the defendant's objection. The State also moved in limine to admit the transcript of the BSR's January 2017 interview of the defendant. The defendant did not object to the State's introduction of the defendant's statements, but objected to the admission of the entire transcript, arguing that it would confuse and mislead the jury. At a hearing on the motion, the trial court indicated that it would review the transcript and make a decision based upon the parties' arguments. At trial, the transcript was admitted without an express ruling on the defendant's objection.

At the close of the State's case, the defendant moved for a directed verdict, which the trial court denied. The jury found the defendant guilty of securities fraud for making untrue statements of material fact. The jury found him not guilty of theft by deception and securities fraud for omitting a material fact. Following trial, the defendant moved for judgment notwithstanding the verdict, which the trial court also denied. This appeal followed.

## I. Sufficiency of the Evidence

We turn first to the defendant's challenge to the sufficiency of the evidence. To prevail upon a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all the evidence and all reasonable inferences drawn from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Leith, 172 N.H. 1, 11 (2019). A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. Id. We objectively review the entire record and examine each evidentiary item in the context of all the evidence, and not in isolation. State v. Saintil-Brown, 172 N.H. 110, 117 (2019). The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt. Id.

When the evidence as to one or more elements of the charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. Id. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions consistent with innocence have been excluded. Id. Regardless of whether the

4

evidence is solely circumstantial or involves both direct and circumstantial evidence, we consider it in the light most favorable to the State. Id. at 118.

The defendant argues that the State failed to present sufficient evidence to prove that any of the four untrue statements of fact were material beyond a reasonable doubt. Specifically, he argues that, because the evidence at trial demonstrates that the victim did not actually rely upon the untrue statements in deciding to invest in the defendant's company, the evidence was insufficient to prove that the statements were material. He contends, therefore, that the trial court erred in denying his motions for directed verdict and judgment notwithstanding the verdict.

To convict the defendant of securities fraud, the State was required to prove that the defendant, "in connection with the offer, sale, or purchase of a security," willfully made an "untrue statement of a material fact." RSA 421-B:5-501(a)(2), :5-508(a) (2015); RSA 421-B:3, I(b), :24, I (2006) (repealed 2016). Although we have never addressed the evidence necessary to prove whether a statement is "material" in the context of securities fraud, both parties rely upon the standard applied by federal courts, which the trial court articulated in its jury instructions. See United States v. Litvak, 889 F.3d 56, 64 (2d Cir. 2018). Accordingly, for purposes of this appeal, we will rely upon federal law in determining whether the State presented sufficient evidence to prove that the defendant's untrue statements were material.

"A misstatement in a securities transaction is material so long as there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision." Id. (quotation and ellipsis omitted). "The standard of a 'reasonable investor,' like the negligence standard of a 'reasonable [person],' is an objective one." Id. Whether the facts of a particular case meet this standard is for the trier of fact to determine. See U.S. S.E.C. v. Pirate Investor LLC, 580 F.3d 233, 240 (4th Cir. 2009). The "materiality of an alleged misrepresentation or omission must be considered in the full context in which it was made," Okla. Firefighters Pen. & Ret. Sys. v. K12, Inc., 66 F. Supp. 3d 711, 714 (E.D. Va. 2014), and "necessarily depends on all relevant circumstances of the particular case," Ganino v. Citizens Utilities Co., 228 F.3d 154, 162 (2d Cir. 2000).

At trial, the victim testified that, regardless of the defendant's untrue statements, he was going to invest. Specifically, he testified that he believed that the "silent capital partner" in the defendant's text message referred to him, not to another investor. Furthermore, he testified that, at the time that the defendant informed him that the defendant had fronted him $50,000, he was already "all-in," and that he was going to invest "regardless of the bookkeeper." The victim also agreed that, regardless of the March 1 deadline provided by the defendant, he was trying to make the payments "as fast as possible." Based upon this testimony, the defendant argues that the victim did not consider the

5

defendant's untrue statements to be important to his decision to invest in the company.

However, because materiality is based upon an objective standard, a "finding of materiality does not require proof of actual reliance." Litvak, 889 F.3d at 65 (quotation omitted); see also United States v. Vilar, 729 F.3d 62, 67 (2d Cir. 2013) ("[T]he government need not prove that the victims of a fraudulent scheme actually relied on the alleged material misrepresentations."). "Materiality requires proof only that a reasonable investor would deem the content of a misstatement a substantial factor to be considered in the making of the particular investment decision." Litvak, 889 F.3d at 65. Thus, "proof of harm is not necessary . . . so long as materiality, intent to defraud, and a connection to a securities transaction are shown." Id.

Nevertheless, the defendant contends that "the only evidence the State presented on the issue of materiality was the testimony of the actual investor," the victim. Therefore, he argues, the State could not meet its burden of proof. We disagree. The evidence at trial reflects that, at the time the defendant made the investment offer to the victim and solicited payments, the victim had limited knowledge of the company and its finances, which was based only upon the defendant's representations of the company's business model and financial success. The victim was not provided access to any financial documentation pertaining to the company. The jury could have readily determined that a reasonable investor with similarly limited knowledge of the defendant's business would find at least one of the misrepresentations here — the existence of at least one other investor in the company, the defendant's ability to front $50,000 to bring in another investor, the company's employment of a bookkeeper who kept close track of investors' payments, and the scheduled "buy in" from yet another investor — to be important in determining whether the business was a legitimate and financially successful operation that would be a lucrative investment. See S.E.C. v. E-Smart Technologies, Inc., 74 F. Supp. 3d 306, 312, 318, 320 (D.D.C. 2014) (concluding that, where a company falsely publicized that it secured profitable contracts, investors would "undoubtedly" find the existence or non-existence of such contracts important); S.E.C. v. StratoComm Corp., 2 F. Supp. 3d 240, 257 (N.D.N.Y. 2014) (concluding that statements falsely portraying a development-stage company as having progressed to the operational stage were material because they related to whether the company "has a product to sell and a viable business model").

We conclude, based upon the record, that a rational jury could determine, beyond a reasonable doubt, that a reasonable investor would deem the content of at least one of the four untrue statements to be a substantial factor in considering whether to invest in the company. Accordingly, the trial court did not err in denying the defendant's motions for a directed verdict and judgment notwithstanding the verdict. In reaching this conclusion, we make no comment on whether, in other factual circumstances, additional evidence,

6

such as expert testimony, may be necessary to prove that a reasonable investor would find a particular false statement material beyond a reasonable doubt. See Litvak, 889 F.3d at 64-65 (explaining that the "reasonable investor" standard "may vary" depending on "the nature of the traders involved in the particular market").[2]

## II.  Evidentiary Challenges

We now address the defendant's challenges to the trial court's evidentiary rulings.  We review a challenge to an evidentiary ruling of the trial court under our unsustainable exercise of discretion standard.  State v. Colbath, 171 N.H. 626, 632 (2019).  For the defendant to prevail under this standard, he must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case.  Id.  In applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made.  Id.  Our task is not to determine whether we would have found differently, but is only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it.  Id. at 632-33.

## A.  Admission of BSR Transcript

We begin with the defendant's challenge to the admission of the transcript of the BSR interview.  The defendant contends that the trial court erred as a matter of law or, alternatively, unsustainably exercised its discretion, because it failed to review the transcript or make a ruling on the defendant's objection before admitting the transcript at trial.  While he concedes that limited portions of the transcript containing specific admissions made by him were admissible as a statement of a party opponent, the defendant contends that, had the trial court reviewed the transcript and conducted the proper analyses under Rules 403 and 801, it would have excluded much of the transcript.  He identifies several excerpts of the transcript that the trial court should have excluded as unfairly prejudicial or as inadmissible hearsay.  See N.H. R. Ev. 403, 801(c).

The State contends that the defendant's argument is not preserved because he did not request the trial court to exclude specific portions of the transcript, nor did he base his argument for exclusion of the transcript on the grounds he now articulates on appeal.  We agree.

---

[2] We further observe that the defendant has made no argument that a material false statement must be made prior to the victim's decision to invest, rather than during the course of his investment, to support a conviction under RSA 421-B:5-501(a)(2).  Therefore, we do not address this issue.

7

The defendant, as the appealing party, has the burden to demonstrate that he "specifically raised the arguments articulated in [his] brief before the trial court." Dukette v. Brazas, 166 N.H. 252, 255 (2014). "The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." State v. Edic, 169 N.H. 580, 583 (2017) (quotation omitted). "This rule, which is based on common sense and judicial economy, recognizes that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." Id. (quotation omitted). "A motion in limine is sufficient to preserve an issue for appeal without objection at trial if the trial court definitively rules upon the issue prior to trial." Laramie v. Stone, 160 N.H. 419, 431 (2010).

In his written objection to the State's motion in limine to admit the transcript, the defendant argued that, while "the State can introduce statements by the defendant during trial, . . . introducing the entire transcript will confuse and potentially mislead the jury in violation of [R]ule 403." At the hearing on the State's motion, the State provided the 153-page transcript to the court, and the defendant again argued that portions of it should be excluded to avoid confusing or misleading the jury. When the court asked him to identify specific excerpts, he pointed to the first few pages in which the BSR attorney made routine introductory statements to the defendant. Upon further inquiry from the court, he stated that there were other "similar comments . . . peppered through the transcript; nothing in particular that I can outline."

The court stated that, because it had not yet reviewed the transcript, it would take the matter under advisement. It stated:

> [I]f the Court reads it and finds that the probative value of admitting this is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or anything further that's listed in [Rule] 403 — including undue delay, waste of time, [and] needless presentation of cumulative evidence, the Court would keep it out. I haven't heard argument with regard to that; I've heard argument about confusing the jury and misleading the jury. So I will review it and . . . make a decision on it, keeping in mind the arguments that have been presented to me today.

The defendant then requested that the court exclude a specific portion of the transcript regarding the Florida settlement, arguing that it was not relevant, "could be construed as a prior bad act," and was "more prejudicial than probative." The court denied the defendant's request, finding that it was relevant to show that the defendant used the victim's money to provide a

8

payment on that settlement agreement, but did so without prejudice to allow him to "reargu[e] it, if there's something more that comes . . . to mind."[3]

When the State sought to admit the transcript at trial, the defendant indicated that he was unsure whether the court had made a ruling on his objection. The trial court stated that it thought it had, but that it would look through the file. The defendant responded, "I'll just maintain my original objection then." Immediately thereafter, the court admitted the transcript without any further discussion.

Based upon the record before us, we conclude that the defendant's argument is not preserved. The defendant did not identify to the trial court the specific portions of the transcript that he now identifies on appeal. Nor did he raise the grounds for excluding those portions that he now raises. Rather, he argued to the trial court that excerpts "peppered through[out]" the transcript should be excluded under Rule 403 because they could potentially confuse or mislead the jury, only specifically identifying one portion of the 153-page transcript as an example, which is not at issue in this appeal. While the defendant faults the trial court for failing to "surgically extract[]" the admissible portions of the transcript "with a scalpel," we fail to see how the trial court could have done so when the defendant did not specifically identify the portions of the 153-page transcript that he deemed inadmissible. Because the defendant failed to raise the specific objections to clearly identified portions of the transcript that he raises on appeal, the trial court did not have an opportunity to rule on them, regardless of whether it definitively ruled on the grounds that the defendant articulated at trial.

The defendant contends that his argument is preserved, pointing specifically to the trial court's comments at the motion hearing: "if the Court . . . finds that the probative value of admitting [the transcript] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or anything further that's listed in [Rule] 403 . . . , the Court would keep it out." Based upon this language, he argues, "Whether defense counsel used talismanic language to preserve the argument is irrelevant where, as here, the trial court clearly viewed defense counsel to have raised the issue." We fail to see how the trial court's recitation of the principles of Rule 403 demonstrates that it believed the defendant to have raised the specific argument he raises on appeal. Again, in the absence of the defendant's identification of the specific portions of the transcript that he identifies on appeal, and the specific arguments he now articulates for their exclusion, the trial court had no opportunity to consider them. Indeed, after

---

[3] We do not understand the defendant to be appealing this particular ruling because he does not challenge it in his brief nor did he raise it in his notice of appeal. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("[W]e confine our review to only those issues that the defendant has fully briefed" and raised in his notice of appeal).

making this statement, the trial court immediately noted, "I've heard argument about confusing the jury and misleading the jury," and indicated that it would rule on the motion in light of the specific arguments made by the parties.

The defendant argues that, even if his argument is not preserved, the trial court committed plain error in admitting the transcript. The plain error rule allows us to consider errors that were not raised in the trial court. State v. Pennock, 168 N.H. 294, 310 (2015). To reverse a trial court decision under the plain error rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. Id.

The defendant contends that the plain error committed by the trial court was that it failed to read the transcript when considering whether to admit it under Rule 403. He asserts that the discussion at trial "made clear that the trial court had not reviewed the transcript between the [motion in limine] hearing and trial because [the court] erroneously thought [it] had already ruled" on its admissibility. He contends that other courts have held "that it is plain error for a court to fail to review challenged evidence when considering whether it should be admitted under Rule 403," and urges us to follow them. See, e.g., United States v. Curtin, 489 F.3d 935, 958 (9th Cir. 2007) (en banc) (holding that a trial court, as a matter of law, does not properly exercise its balancing discretion under Rule 403 when it fails to "personally examine and evaluate all that it must weigh").

The defendant, however, fails to demonstrate that the trial court did not read the transcript prior to its admission, and therefore cannot meet the first criterion — that the trial court committed error. In each of the federal cases the defendant identifies, the record contained express admissions from the court that it had not reviewed the proffered evidence prior to ruling on its admissibility. See United States v. Cunningham, 694 F.3d 372, 379-80, 383 (3d Cir. 2012); United States v. Loughry, 660 F.3d 965, 970 (7th Cir. 2011); Curtin, 489 F.3d at 956, 956-57 n.8. Nothing in the record before us demonstrates that the trial court had not read the transcript prior to admitting it. Thus, we cannot conclude that the trial court committed error on this ground.

### B. Admission of Evidence of Prior BSR Investigation

We next address the defendant's challenge to the trial court's admission of evidence of the prior BSR investigation. The defendant argues that the trial court unsustainably exercised its discretion in admitting evidence of the underlying conduct at issue in the prior BSR investigation and settlement agreement based solely upon the State's offers of proof in its written motion to admit the evidence. Noting that "neither party provided the court with a copy of the settlement agreement or a transcript of discussions between [the

10

defendant] and the BSR," he argues that the trial court erred in granting the State's motion without reviewing the evidence the State sought to admit.

The State's motion sought to admit evidence of the prior BSR investigation on two grounds: (1) as intrinsic evidence of an element — the material omission — of one securities fraud indictment; and (2) as evidence admissible under Rule 404(b) "to prove motive, knowledge, and absence of mistake." The State did not specify whether the evidence it sought to admit consisted of documentary evidence in addition to testimony. However, it outlined the underlying facts at issue in the investigation — specifically, that the BSR found that the defendant had made several false material misrepresentations and omissions in soliciting approximately $48,835 in investments from two individuals as part of an "investment club," and that he had lost all of the money and paid less than $1,200 in dividends. The motion also compared the timing of the settlement negotiations, the agreement, and the defendant's $10,000 payment to the BSR with that of his solicitation of the victim's investment and receipt of his payments.

The trial court, specifically noting that it rendered its ruling based upon the State's offer of proof, granted the State's motion, finding, in part, that the evidence was "highly relevant" to show the defendant's "knowledge of the industry," absence of mistake, and motive to obtain financial investment from the victim, and therefore outweighed any unfair prejudice. The court further observed that it made this ruling "in a bit of a vacuum since neither party provided the Court with a copy of the settlement agreement or a transcript of discussions between Defendant and Bureau personnel," and therefore permitted the defendant to provide a specific objection if he "believes particular statements of Defendant should be excluded." The defendant did not move to reconsider or further object to the admissibility of the evidence prior to or during trial.

As an initial matter, we observe that, based upon the record before us, the State did not introduce the settlement agreement itself into evidence at trial. Moreover, we cannot identify any transcript or other documentation from the prior BSR investigation in the record. The record reflects only that the State presented evidence of the investigation and settlement agreement through the testimony of the BSR attorney and statements in the January 2017 transcript. Accordingly, to the extent that the defendant challenges the trial court's ruling as it relates to the admission of the settlement agreement itself or any other documentation from the prior BSR investigation, no such documents were presented to the jury.

Furthermore, the defendant made no objection to the trial court's consideration of the State's offer of proof. Indeed, given that neither party supplied the trial court with any documentation to supplement or challenge the State's offer of proof, the offer of proof provided the only facts upon which the

11

trial court could base its ruling. The trial court specifically recognized the limited set of facts it had before it by permitting the defendant to raise more specific objections. Thus, the trial court did not unsustainably exercise its discretion in relying upon the offer of proof in rendering its decision on the State's motion.

The defendant further challenges the merits of the trial court's decision under Rules 403 and 404(b). He argues that the State's argument, which the trial court adopted — that the facts underlying the investigation and settlement agreement were relevant to prove motive, knowledge of the industry, and absence of mistake — was a "thinly disguised" propensity argument. See N.H. R. Ev. 404(b)(2)(A). Further, he contends that there was no "clear proof" that he committed the alleged acts because he made no admission of fault in the settlement agreement. See N.H. R. Ev. 404(b)(2)(B). He also argues that the risk that the jury would use the evidence for propensity purposes outweighed its minimal probative value, noting that the State could have admitted the relevant portions of the evidence — the timing of the investigation and the existence of the settlement agreement — without detailing the underlying facts. See N.H. R. Ev. 403, 404(b)(2)(C).

We conclude that the defendant failed to preserve these arguments. In his objection to the State's motion, he argued that the evidence was not relevant because the investigation and underlying events occurred prior to the events underlying the charged crimes in this case. While he made the general argument that the State sought to use the evidence to prove his propensity to commit the charged crimes, the defendant did not address any of the three grounds under Rule 404(b) upon which the State sought, and the trial court relied, to admit the underlying facts of the investigation. Nor did he argue that the settlement agreement fails to prove that the defendant actually committed the acts described therein. Nor did he suggest to the trial court, as he does here, that it could avoid any undue prejudice to him by limiting the evidence to the timing of the investigation and existence of the settlement agreement. Thus, the trial court did not have the opportunity to rule on the arguments he now raises on appeal. See Edic, 169 N.H. at 583.

Furthermore, we note that, when the State introduced evidence of the prior investigation and settlement agreement at trial through the BSR attorney's testimony and January 2017 transcript, the defendant made no specific objection. Similarly, while the defendant contends that the unfair prejudice was especially significant "in the absence of a limiting instruction," nothing in the record demonstrates that the defendant requested that the trial court include such an instruction. See State v. Sinbandith, 143 N.H. 579, 581 (1999) (explaining that a defendant waives his right to a specific jury instruction unless the request is timely made). Accordingly, the defendant's objection prior to trial is insufficient to demonstrate that he preserved these arguments on appeal.

12

Any arguments the defendant raised in his notice of appeal, but did not brief, are deemed waived.  See State v. Barr, 172 N.H. 681, 694 (2019).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**