NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2015-0329


THE STATE OF NEW HAMPSHIRE

v.

WILLIAM EDIC

Argued: September 14, 2016
Opinion Issued: January 31, 2017


Joseph A. Foster, attorney general (Peter Hinckley, senior assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


HICKS, J. The defendant, William Edic, appeals his conviction, following a jury trial in Superior Court (McNamara, J.), on one count of second degree murder and one count of falsifying physical evidence. See RSA 630:1-b, I(b) (2016); RSA 641:6, I (2016). On appeal, the defendant challenges various evidentiary rulings made at trial. We affirm.

The record supports the following facts. The charges against the defendant stem from events occurring on July 26, 2010, at the New Hampshire State Prison where the defendant and the victim were then incarcerated. The

second degree murder indictment alleged that the defendant, acting in concert with and aided by another inmate, Thomas Milton, "recklessly cause[d] the death of [the victim] under circumstances manifesting an extreme indifference to the value of human life by striking [the victim] repeatedly in the head and face areas." The falsifying physical evidence indictment alleged that the defendant, acting in concert with and aided by Milton and/or others, "believing that an official law enforcement investigation into the . . . attack on [the victim] was about to be instituted, destroyed, concealed, and/or removed items, to wit, blood evidence and cleaning materials, including towels and similar cloths, with a purpose to impair their availability in such investigation." After a trial, the jury found the defendant guilty on both counts.

On appeal, the defendant argues that the trial court erred in prohibiting him from: (1) introducing three audio recordings of telephone calls made by other inmates at the New Hampshire State Prison; (2) questioning another inmate about that inmate's prison disciplinary history; and (3) calling certain correctional officers to testify at trial. The defendant asserts that the trial court erroneously relied upon New Hampshire Rule of Evidence 608(b) in excluding the three audio recordings, and that the exclusion of the recordings violated his state and federal constitutional rights to due process, confrontation, and to present all proofs favorable. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, VI, XIV. As to the other inmate's prison disciplinary history, the defendant challenges the trial court's rulings that the inmate's disciplinary history was beyond the scope of redirect examination, and that the inmate did not open the door to his disciplinary record. With respect to the correctional officers' testimony, the defendant contends that the trial court misapplied Rule 608(b) in excluding the officers' testimony, and, alternatively, that the State opened the door to it.

As an initial matter, the State asserts that a number of the defendant's arguments are not preserved. Specifically, the State argues that: (1) the defendant's Rule 608(b) argument is not preserved as it relates to the first two audio recordings; (2) the defendant's constitutional arguments relating to the recordings are not preserved; and (3) the defendant's Rule 608(b) argument is not preserved as it relates to the correctional officers' testimony.

"The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review." State v. Blackmer, 149 N.H. 47, 48 (2003) (quotation omitted). "This rule, which is based on common sense and judicial economy, recognizes that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." Id. (quotation omitted).

Based upon our review of the record, we conclude that the defendant failed to preserve the following arguments: (1) his argument that the trial court erroneously applied Rule 608(b) to preclude him from introducing the second

recording; (2) his constitutional arguments relating to the first and second recordings; and (3) his due process argument relating to the third recording. Because the record demonstrates that the defendant did not raise these arguments in the trial court, they are not preserved for our review. We, accordingly, decline to consider these arguments in the first instance on appeal. See id.; see also State v. Alexander, 143 N.H. 216, 220 (1998) (determining that defendant's constitutional argument not preserved for appellate review where defendant did not specifically assert constitutional challenge before trial court).

We conclude that the defendant's remaining arguments are preserved, and consider the following issues in turn: (1) the defendant's evidentiary arguments relating to the third audio recording; (2) the defendant's argument that exclusion of the third recording violated his state and federal constitutional rights to confrontation and to present all proofs favorable; and (3) collectively, the defendant's evidentiary arguments relating to the exclusion of the first recording, the limitation of cross-examination of an inmate about his prison disciplinary history, and the exclusion of the correctional officers' testimony.

## I. Exclusion of Third Recording — Evidentiary Argument

The third audio recording is of a conversation between State witness William Morel, an inmate at the New Hampshire State Prison whose testimony implicated the defendant in the July 26, 2010 incident, and an investigator. The defendant sought to admit this recording at trial to demonstrate that Morel received a benefit—specifically, a reduction in his inmate classification—in exchange for providing testimony against the defendant. The State objected, and the trial court sustained the State's objection.

"The trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion." State v. Stowe, 162 N.H. 464, 470 (2011). "To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case." Id.

On appeal, the defendant argues that the trial court erred in excluding this audio recording under Rule 608(b). Rule 608(b) provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness . . . .

3

This rule "permits a cross-examiner to inquire into conduct that is probative of the witness's character for truthfulness or untruthfulness." Stowe, 162 N.H. at 470. "Generally, however, the examiner must take the answer as the witness gives it." Id. This is because the rule "prohibits the examiner from introducing extrinsic evidence, such as calling other witnesses, to rebut the witness's statements." Id. (quotation omitted).

The defendant contends that Rule 608(b) applies only to a general attack on a witness's character for truthfulness or untruthfulness. He claims that the third recording evidences Morel's motive to provide testimony rather than his general character for truthfulness or untruthfulness, and that, therefore, Rule 608(b) did not bar introduction of the recording at trial. In response, the State contends that the trial court's ruling precluding the defendant from introducing the recording was proper.

The State also suggests that, in addition to relying upon Rule 608(b), the trial court ruled that the third audio recording was inadmissible hearsay. See N.H. R. Ev. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); N.H. R. Ev. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority."). Based upon our review of the record, we agree that the trial court made such a ruling. The defendant does not challenge this basis for the trial court's ruling on appeal. Because the trial court's hearsay ruling provided a secondary basis for the exclusion of the third recording from trial—one which the defendant did not appeal—we uphold the court's decision to exclude the recording without addressing the merits of the defendant's argument under Rule 608(b). Cf. Koor Communication v. City of Lebanon, 148 N.H. 618, 624 (2002) (upholding trial court's grant of summary judgment without addressing merits of plaintiff's argument where trial court articulated second basis for ruling and plaintiff did not properly challenge secondary basis on appeal).

## II. Exclusion of Third Recording — Constitutional Arguments

The defendant next argues that the trial court's exclusion of the third recording violated his state and federal constitutional rights to confrontation, and to present all proofs favorable. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, VI, XIV. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). Part I, Article 15 of the State Constitution provides, in pertinent part: "Every subject shall have a right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and to be fully heard in his defense, by himself, and counsel." N.H. CONST. pt. I, art. 15.

4

The defendant argues that the trial court's preclusion of the third recording violated his right to present all proofs favorable. Part I, Article 15 of the State Constitution and the Compulsory Process Clause of the Sixth Amendment to the Federal Constitution guarantee the defendant "the right . . . to produce all proofs favorable to his defense." State v. Newcomb, 140 N.H. 72, 79 (1995); see Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987) (explaining that, as part of the specific rights secured by the Sixth Amendment, "criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt"). However, neither provision "entitle[s] the defendant to introduce evidence in violation of the rules of evidence." State v. Graf, 143 N.H. 294, 296–97 (1999); see Taylor v. Illinois, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). Here, the trial court excluded the third audio recording on hearsay grounds—a ruling not challenged on appeal. Accordingly, we reject the defendant's argument that the trial court's refusal to allow him to introduce the third recording violated his right to produce all proofs favorable. See Graf, 143 N.H. at 296–97.

The defendant further argues that the trial court's preclusion of the third recording violated his right to confrontation. We have held that, incident to the rights guaranteed under Part I, Article 15, is the opportunity to impeach a witness's credibility through cross-examination. State v. Miller, 155 N.H. 246, 253 (2007). The trial court "may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry," but "[o]nce a defendant has been permitted a threshold level of inquiry, . . . the constitutional standard is satisfied, and the judge's limiting of cross-examination is measured against an unsustainable exercise of discretion standard." Id. at 253-54 (quotation omitted). "Thus, when the record reveals that a threshold level of inquiry was allowed, we will uphold the trial court's decision limiting the scope of further cross-examination unless the defendant demonstrates that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id. at 254 (quotation omitted).

Here, the defendant does not argue that his ability to cross-examine Morel about the recording was either denied or limited. Rather, he asserts that, "by preventing counsel from playing the recording[] in the jury's presence during cross[-examination], the [trial] court deprived counsel of the opportunity to persuade the jury of the validity of the line of attack on [Morel's] credibility." The trial court permitted the defendant to extensively cross-examine Morel on issues related to the recorded conversation. Defense counsel cross-examined Morel at length about whether Morel requested benefits such as reclassification from investigators, and about whether investigators in fact assisted with his reclassification or provided him with any other benefits. She also questioned Morel about the statements he made on the third recording. Specifically, Morel

agreed with defense counsel that he had told an investigator that he "appreciate[ed] the secretive [reclassification]" and asked the investigator to "send Santa Claus a thank you message." (Quotation omitted.) Although defense counsel was precluded from eliciting the investigator's responses to Morel's statements, defense counsel was nevertheless able to explore the question of whether Morel received a benefit in exchange for his testimony. Our review of the record demonstrates that the defendant was able to make a sufficient threshold level of inquiry in his attempt to discredit Morel in the eyes of the jury. See id. Accordingly, we conclude that exclusion of the third audio recording did not violate the defendant's right to confrontation.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. Roy, 167 N.H. at 290. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

### III.  Exclusion of First Audio Recording, Limitation of Cross-examination about Prison Disciplinary History, and Exclusion of Correctional Officers' Testimony

The trial court excluded the first audio recording from trial. This recording captured a conversation between Michael Mendoza, another inmate at the New Hampshire State Prison whose testimony implicated the defendant in the July 26, 2010 incident, and his wife during which the two argued. The defendant contends that exclusion of this recording was error because the recording was relevant to Mendoza's motivation to testify against the defendant.

The trial court also prohibited the defendant from questioning Mendoza about Mendoza's prison disciplinary history during recross-examination. According to the defendant, Mendoza's disciplinary history was relevant to impeach Mendoza's general credibility and, because it evidenced his desire to obtain favorable consideration at an upcoming parole hearing, it was also relevant to the issue of Mendoza's motivation to testify against the defendant.

The trial court also excluded the testimony of two correctional officers. The defendant sought to introduce the testimony of the two correctional officers regarding a physical altercation that occurred at the New Hampshire State Prison involving State witness Randall Chapman—another inmate at the prison whose testimony implicated the defendant in the July 26, 2010 incident. Specifically, the defense asserted that the officers would testify that Chapman had been involved in a fight, and that video footage of that altercation, which was no longer available, suggested that Chapman may have instigated the fight, and may have acted in concert with another inmate. The defendant argues that exclusion of this testimony was erroneous because it was relevant to the issue of Chapman's motive to testify at the defendant's trial. The defendant maintains that the officers' testimony evidenced Chapman's motive

to testify for the prosecution, and that it countered the State's position that Chapman agreed to testify against the defendant only because the prison gang with which he and the defendant were associated "turned on him."

The defendant argues that: (1) the trial court erroneously relied upon Rule 608(b) in excluding the first recording; (2) the trial court erroneously prohibited him from cross-examining Mendoza about his disciplinary history because, among other things, Mendoza opened the door to questioning regarding his disciplinary record; and (3) the trial court erroneously relied upon Rule 608(b) in excluding the correctional officers' testimony and erroneously ruled that the State did not open the door to it. The State responds to these arguments on their merits, and argues, in the alternative, that any error in excluding this evidence was harmless. We need not determine whether the trial court erred in excluding the first audio recording, limiting cross-examination about Mendoza's disciplinary history, and excluding the correctional officers' testimony because, even if these rulings were erroneous, any error was harmless. See State v. Botelho, 165 N.H. 751, 756 (2013).

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

State v. Dupont, 149 N.H. 70, 74 (2003) (quotation omitted). "To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict." State v. Peters, 162 N.H. 30, 36 (2011). "This standard applies to both the erroneous admission and exclusion of evidence." Id. An error may be harmless beyond a reasonable doubt if the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Id. In making this determination, we consider the other evidence presented at trial as well as the character of the erroneously admitted or excluded evidence itself. Id.

The defendant was convicted of second degree murder and falsifying physical evidence. See RSA 630:1-b, I(b); RSA 641:6, I. To convict the defendant of the applicable variant of second degree murder, the State had to prove beyond a reasonable doubt that he caused the death of another "recklessly under circumstances manifesting an extreme indifference to the value of human life." RSA 630:1-b, I(b). "A person acts recklessly with respect to a material element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." RSA 626:2, II(c) (2016). "The risk must be of

such a nature and degree that, considering the circumstances known to him, its disregard constitutes a gross deviation from the conduct that a law-abiding person would observe in the situation." Id. Additionally, proof of the applicable variant of falsifying physical evidence required the State to show that, "believing that an . . . investigation [was] pending or about to be instituted, [the defendant] . . . [a]lter[ed], destroy[ed], conceal[ed] or remove[ed] any thing with a purpose to impair its verity or availability in such proceeding or investigation." RSA 641:6, I.

Here, the other evidence of the defendant's guilt of these crimes was overwhelming. The other evidence included the testimony of Mendoza, Morel, and another inmate who witnessed the attack on the victim. All three of these witnesses identified the defendant in court, and testified that the defendant participated in the attack on the victim by "stomping" on the victim's head multiple times. They variously described the victim's head as "bouncing" or "lifting" off of the concrete floor as the defendant stomped on it. They also testified that the defendant helped to move the victim's unconscious body from the area where the attack occurred. A nurse employed by the prison testified that she was called to respond to a medical emergency and observed the victim "laying on the mezzanine full of blood, not responsive and in very bad shape." She testified that the victim's "face was swollen," and that he "was bruised and bloody" and "making an abnormal respiration sound." Moreover, the State presented medical testimony linking the attack to the victim's subsequent death.

The other evidence also included the testimony of Mendoza and Chapman who witnessed the defendant's participation in the destruction of evidence. Mendoza testified that, after the attack, the defendant used a towel to help clean the victim's "[b]lood" off of the floor. Chapman testified that the defendant cleaned up both "blood" and "brain matter." Chapman also testified that he assisted the defendant in cleaning up after the attack, and that the defendant flushed the towel the defendant had used down a toilet. A prison investigator testified that, at the time of the attack, the inmates had access to showers, sinks, toilets, and drains, and a correctional officer testified that the inmates had access to cleaning supplies.

The other evidence also included testimony that the defendant had a motive for attacking the victim. Specifically, Mendoza, Morel, and Chapman testified that the defendant was a member of a prison gang. Chapman, a fellow gang member, testified that a high-ranking gang member believed that the victim had informed on him, and that the defendant and Milton attacked the victim because that is what the high-ranking gang member wanted them to do. Chapman further testified that he tried to talk the defendant out of attacking the victim, and that the defendant told Chapman that "he was going to do what [the high-ranking gang member] wanted." Morel also testified on the issue of motive, stating that, before the attack, the high-ranking gang member told him

8

that the victim "was a rat and . . . was telling on things that he shouldn't have been telling on." Chapman explained that a "rat" is someone who provides incriminating information to the authorities. Further, another inmate testified that, just prior to the attack, Milton and the defendant talked about how they were "waiting on somebody" and were going to "hit him." According to the inmate, Milton and the defendant talked about the person they were waiting for "being a snitch," which he explained is the same thing as a "rat." Mendoza, Morel, and another inmate each testified that, during the attack, the defendant and/or Milton called the victim a "rat." Additionally, the State presented testimony from a member of the East Coast Gang Investigators Association explaining that members of the defendant's gang who fail to follow gang rules could face retribution from the gang.

Finally, the other evidence included the defendant's confession to other inmates and evidence showing that the defendant was conscious of his guilt. Mendoza testified that, after the attack, the defendant confessed that he and Milton "jumped [the victim] because [the victim] had snitched." Morel testified that the defendant told him that he "really didn't mean to take it that far" and that he had "flushed [the towel he used to clean up the victim's blood] down the toilet." Moreover, Chapman testified that, after the attack, the defendant told him that "he had snapped and things got out of control," that "he never meant for [the victim] to get hurt and killed," that "he never meant for it to happen," that "he should have listened [to Chapman]," and that "he frigging should never have got involved."

Against this evidence, the first audio recording, the evidence of Mendoza's inmate disciplinary history, and the correctional officers' testimony would have been merely cumulative or inconsequential. See Peters, 162 N.H. at 36. The evidence the defendant sought to admit was not direct evidence of the crimes charged. Rather, as the defendant argues, the first audio recording was relevant to Mendoza's motive to testify, Mendoza's prison disciplinary history was relevant to both his general credibility and motive to testify, and the correctional officers' testimony was relevant to Chapman's motive to testify.

The record contains ample other evidence that Mendoza was motivated to testify by his desire to get out of prison. On cross-examination, Mendoza agreed with defense counsel that he argued with his wife "every six months or so," and that they had one such argument—the argument captured by the first audio recording—in the days leading up to the attack on the victim. He agreed with defense counsel that these arguments were about the difficulties of "having a husband in prison," including the financial, emotional, and social difficulties his wife faced. He further agreed with defense counsel that these arguments with his wife were "hard," and that they made him "want to get out of prison really bad." We thus conclude that the first audio recording was "merely cumulative . . . in relation to the strength of the State's evidence of guilt." Id.

9

For similar reasons, we also conclude that Mendoza's disciplinary history was inconsequential in light of other evidence of his motive to testify at trial. In addition to Mendoza's agreement with defense counsel that he "want[ed] to get out of prison really bad" because it was hard on his marriage, Mendoza testified that he had safety issues in prison. He agreed with defense counsel on cross-examination that he had an upcoming parole hearing and that he was "hoping to get parole." He testified that, to be paroled, he had to have his "programs done," and agreed with defense counsel that he was worried he would not get parole because he could not get into a certain program.

Moreover, although Mendoza's disciplinary history was relevant to his general credibility, there was ample other evidence demonstrating his lack of trustworthiness. At trial, defense counsel elicited testimony from Mendoza that, in 2008, he was convicted on four counts of witness tampering, one count of falsifying physical evidence, and one count of accomplice to reckless conduct. She also elicited testimony that, in 2011, Mendoza was charged with additional crimes, including possession of Oxycodone, possession of cocaine, and escape. Further, defense counsel elicited testimony that, in addition to his 2008 and 2011 crimes, Mendoza had been convicted on two counts of aggravated battery on a law enforcement officer with a deadly weapon and one count of carrying a concealed weapon. This type of evidence bears on Mendoza's general credibility in the same fashion as his disciplinary history. See State v. Mayo, 167 N.H. 443, 458 (2015) ("Jurors ought to be informed of what sort of person is asking them to take his word, and lack of trustworthiness may be evinced by a [witness]'s abiding and repeated contempt for laws which he is legally and morally bound to obey." (quotation and emphasis omitted)). In light of this other evidence of Mendoza's lack of trustworthiness, the impeachment value of Mendoza's disciplinary history was inconsequential.

The record likewise contains ample evidence of Chapman's motive to testify, rendering the anticipated testimony of the two correctional officers both cumulative and inconsequential. As noted above, the defendant argues that the officers' testimony evidenced Chapman's self-interested motive to offer testimony because it: (1) evidenced his desire to curry favor with the prosecution; and (2) countered the State's position that Chapman agreed to testify against the defendant only because the gang "turned on him."

The officers' testimony was cumulative of Chapman's testimony on cross-examination. Although Chapman's testimony may have created the inference that his altercation was the product of gang retaliation, he agreed with the prosecutor that he was charged with a disciplinary violation after the altercation, and testified that he pleaded guilty to the disciplinary charge. He further agreed with defense counsel that a disciplinary violation of this nature could interfere with his parole eligibility, that he was placed in secured housing

after the incident, and that he remained uninjured while his purported attacker sustained injuries during the altercation.

In addition, the officers' testimony was inconsequential in light of other evidence of Chapman's motive to testify. At trial, Chapman agreed with defense counsel that he "[did not] want to be in jail or prison." He testified that he entered into a cooperation agreement with the State in exchange for "[a] few months knocked off [his] minimum sentence" and, consequently, "[e]arly release on [his] parole." See United States v. Spriggs, 996 F.2d 320, 323 (D.C. Cir. 1993) (explaining that a cooperation agreement "obviously gives the witness an incentive to incriminate the defendant, guilty or not, in the hope of leniency for himself"). He also agreed with defense counsel that he was paroled despite having a major disciplinary violation on his record, and moved to another correctional facility after he entered into the cooperation agreement.

For these reasons, we conclude that the State has met its burden of proving that any error in excluding the evidence the defendant sought to admit was harmless beyond a reasonable doubt.

Finally, any issues raised in the defendant's notice of appeal, but not briefed, are deemed waived. See State v. Cooper, 168 N.H. 161, 171 (2015).

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

11