# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0552, <u>Brian Desfosses v. Thomas Ippolito & a.</u>, the court on April 15, 2019, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The defendants, Thomas Ippolito and Marie Garvey (tenants), appeal a decision of the Circuit Court (<u>DeVries</u>, J.) entering judgment in favor of the plaintiff, Brian Desfosses (landlord), in an eviction proceeding.  The trial court terminated the tenancy pursuant to RSA 540:2, II(d) (Supp. 2018), based upon the tenants' conduct in "regularly interrupt[ing] the quiet enjoyment by other tenants of the property, a [four-unit] multi-family dwelling," by being "loud, in arguments, at various hours of the night [and] at other times, disturbing other tenants."[1]  The tenants argue that the trial court erred by: (1) allowing into evidence "hearsay in the form of printouts of text messages that originated from a biased and prejudiced declarant," and not considering Ippolito's testimony concerning that declarant allegedly because the testimony was hearsay; (2) allowing into evidence certain police reports involving Garvey over the tenants' relevance objections; and (3) evicting Ippolito based upon Garvey's conduct.

We will uphold the trial court's factual findings unless they are unsupported by the evidence or erroneous as a matter of law, deferring to the trial court's judgment in resolving conflicts in testimony, evaluating the credibility of witnesses, and determining the weight of the evidence presented.  <u>Town of Atkinson v. Malborn Realty Trust</u>, 164 N.H. 62, 66-67 (2012); <u>Colonial Village, Inc. v. Pelkey</u>, 157 N.H. 91, 92 (2008).  As the trier of fact, the trial court is entitled to accept or reject, in whole or in part, whatever evidence is presented, and is not required to believe even uncontested testimony.  <u>Malborn Realty Trust</u>, 164 N.H. at 67.

The trial court has broad discretion to determine the admissibility of evidence, and we will not disturb its evidentiary rulings absent an

---

[1] RSA 540:2, II(d) authorizes the termination of a tenancy of a restricted property based upon "[b]ehavior of the tenant[s] . . . which adversely affects the health or safety of the other tenants."  On appeal, the tenants do not challenge whether "regularly interrupt[ing] the quiet enjoyment" of other tenants by being "loud, in arguments" may constitute "behavior . . . adversely affect[ing] the health or safety of the other tenants" for purposes of RSA 540:2, II(d).  Accordingly, we will assume, for purposes of this appeal only, that engaging in the behavior that the trial court found the tenants to have engaged in satisfies RSA 540:2, II(d).

unsustainable exercise of discretion.  State v. Edic, 169 N.H. 580, 584 (2017).
To establish that the trial court unsustainably exercised its discretion, the
tenants bear the burden on appeal to show that the court's evidentiary ruling
was clearly untenable or unreasonable to the prejudice of their case.  See id.

We first address the tenants' hearsay arguments.  The tenants first
challenge the admission of printouts of certain text messages.  At trial, the
tenants objected, on hearsay grounds, to the following testimony of the
landlord: "I did give [the tenants] an eviction notice in May because the[ir]
behavior was such that tenants around them told me that the –."  The trial
court initially sustained the objection to the extent the testimony was being
"offered for the truth," but then asked, "Are you telling me this is why you took
action as to what was happening?"  The landlord replied in the affirmative, and
stated that he had "text messages to support that, which [the landlord] could
submit."  The trial court responded, "Well, text messages would still constitute
hearsay, but if you're – well, why don't you just continue and I'll sort it out."

The landlord subsequently testified that he had issued an eviction notice
based in part upon reports that the tenants were

> having loud arguments in the middle of the night.  And to be fair,
> [the landlord's] tenants ha[d] told [the landlord] that [Ippolito] does
> not seem to be the problem, but [that Garvey] is extremely loud
> and screams, swears, stomps, slamming doors.  The back slider of
> my house has taken a massive beating.  I mean, [Garvey] will open
> and close that door and slam it, and slam it, and slam it, and slam
> it over and over and over again.
>
> Two mornings ago my tenant informed me she was slamming
> the door in the middle of the hallway for 15 minutes  straight,
> slamming it over, and over, and over, and over again for no reason,
> at 5 a.m.  She has conversations in the apartment with nobody.
> She has screaming matches in the apartment with nobody.

The landlord identified the source of this information as "texts from all the
other tenants," and testified that he had "screenshotted and printed" the texts,
and that he had "no way to manipulate" them.  When counsel for the tenants
responded that he could not cross-examine texts, the trial court stated,

> . . . Well, I think there's a – the issue is a landlord's duty to
> secure the premises so that the other tenants' peace and
> enjoyment are not disturbed.  So if what you're telling me is a
> series of things happened –
>
> . . .

. . . – that brought you here –

. . .

. . . – because you have a duty to be here, that's testimony that is relevant.

. . .

. . . So it doesn't have to be truthful that they weren't – that the noises were loud at a particular time, but you can describe the circumstances that led you to file this petition and allege what you did.

Subsequently, the landlord testified that he had "done everything [he could] possibly do to try and ask [the tenants] to please be quiet in the interest of the peace of their neighbors. [The tenants] have time and time again . . . totally disregarded that." The trial court then asked whether the landlord had text messages that reflected "actual back and forth [communications] with the tenants." When the landlord answered affirmatively, the trial court stated that "[t]hose are not hearsay. Those would be an admission." At that point, the trial court allowed the landlord to introduce into evidence an exhibit consisting of twenty-three pages of images of what appear to be "screenshots" taken from a mobile phone containing what appear to be numerous text messages.

On appeal, the defendants argue that the trial court erred because the text messages "do not meet the criteria of [New Hampshire] Rule [of Evidence] 803," and because the declarants "do not meet the criteria for being unavailable that are described in [New Hampshire] Rule [of Evidence] 804." The trial court, however, did not admit text messages based upon any of the hearsay exceptions in Rules 803 or 804. Rather, it allowed the messages, or testimony concerning their content, into evidence because they contained "admissions" of a party, see N.H. R. Ev. 801(d)(2) (providing that an admission of a party offered against the party is not hearsay), and because they were offered not to prove the truth of the matters asserted in the messages, but to establish that the landlord was seeking the eviction to satisfy his obligation to secure the quiet enjoyment of other tenants, see N.H. R. Ev. 801(c)(2) (defining hearsay to mean a statement offered into evidence to prove the truth of the matter asserted in the statement). The tenants do not address these grounds in their brief. Moreover, we note that under RSA 540:16-a (2007), "records of complaints made by other tenants to the landlord" are admissible in any possessory action "based on allegations concerning the behavior of the defendant or his family," so long as certain foundational requirements are satisfied. See N.H. R. Ev. 802 (allowing for statutory exceptions to the hearsay rule). Under the circumstances, we conclude that the tenants have not

3

established that admission of the text messages was clearly untenable or unreasonable to the prejudice of their case.  Edic, 169 N.H. at 584.

The tenants next argue that the trial court erred by "considering Mr. Ippolito's testimony that" the author of many of the text messages smokes marijuana "to be hearsay."  To the contrary, the record does not reflect that the trial court deemed Ippolito's testimony concerning the other person's alleged marijuana usage to be hearsay, or excluded Ippolito's testimony concerning marijuana usage on any basis.  Although the trial court suggested, in response to Ippolito's assertion that he had proof of the other person's marijuana usage because he had "talked to the guy," that evidence derived from such a conversation would be hearsay, the record shows that the trial court allowed Ippolito to testify at length that the other person smokes marijuana, that Ippolito had smelled marijuana from the other person's apartment "many times," and that he had complained to the landlord concerning the other person's marijuana usage.  The trial court even invited Ippolito to introduce "any documentary evidence that [he] would like to present . . . regarding a co-tenant's use of marijuana," and admitted into evidence e-mail correspondence between Ippolito and the landlord concerning the other person's marijuana usage.  The trial court merely noted that the e-mail, which was dated long after the eviction process had commenced, was "not relevant to the period we're talking about, in terms of why" the landlord was seeking to evict the tenants.

We next address the tenants' arguments that the trial court erred by allowing into evidence the police reports.  The tenants first argue that the trial court erred by allowing into evidence a police report concerning a criminal case that had been brought against Garvey for forgery of a check.  The record reflects that the alleged victim of the charged crime is a former tenant of the leased premises, and that the eviction notice was based, in part, upon the alleged crime.  The tenants argue that the police report was not relevant because "the police report indicates that the alleged check forgery did not occur at the" leased premises.

Evidence is relevant if "it has any tendency to make a fact" that "is of consequence in determining the action" "more or less probable than it would be without the evidence."  N.H. R. Ev. 401(a)&(b).  Even if we were to assume, without deciding, that the physical location of the crime relied upon as one ground for the eviction under RSA 540:2, II(d) is a material consideration in determining the relevance of the police report, the trial court ultimately granted the eviction not on the basis of the crime, but upon the tenants' conduct in "engaging in loud arguments" so as to regularly interfere with the quiet enjoyment of other tenants.  Under these circumstances, the tenants have not established that allowing the report into evidence was clearly untenable or unreasonable to the prejudice of their case.  Edic, 169 N.H. at 584.

4

The tenants additionally challenge the relevance of several other police reports that concerned Garvey. The tenants argue that the reports were not relevant because they largely involved incidents occurring at locations other than the leased premises and at times other than during the tenancy, and that the reports that did relate to the leased premises "indicate that lease violating disturbances did not occur at the" leased premises. Regardless of whether the incidents that led to the police reports occurred at the leased premises or involved breaches of the lease, the reports involved incidents of allegedly volatile behavior on the part of Garvey that, at times, led to public disturbances, and in at least one instance, concerned an altercation between Garvey and Ippolito. The landlord offered the reports into evidence because "they were all consistent with things that [he had] heard from [his other] tenants about the way that [Garvey] behaves herself. Screaming – . . . arguing." Upon this record, we cannot say that the trial court's decision to allow the police reports into evidence over the tenants' relevance objections was clearly untenable or unreasonable to the prejudice of their case. Id.

Finally, we address the tenants' argument that the trial court erred by evicting Ippolito based upon Garvey's conduct. The tenants argue that, because the landlord testified that "to be fair, [the landlord's] tenants ha[d] told [him] that [Ippolito] does not seem to be the problem," because the tenants had filed separate applications with the landlord prior to the tenancy, and because the landlord approved each tenant's application individually, the trial court should not have terminated Ippolito's tenancy. Regardless of whether Ippolito "seem[ed] to be the problem," the landlord testified that both tenants were engaging in "loud arguments in the middle of the night." The trial court reasonably could have credited this testimony in finding that both tenants were "regularly interrupt[ing] the quiet enjoyment by other tenants of the property" by being "loud, in arguments." See Malborn Realty Trust, 164 N.H. at 67. As noted above, the tenants do not otherwise challenge whether arguing loudly so as to interfere with the quiet enjoyment of other tenants may justify terminating a tenancy under RSA 540:2, II(d). Accordingly, we cannot say that the trial court's finding that Ippolito regularly interrupted the quiet enjoyment of other tenants was either unsupported by the evidence or erroneous as a matter of law. Id. at 66; Pelkey, 157 N.H. at 92.

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,
Clerk**

5