# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2018-0368, <u>State of New Hampshire v. Wilmy Taveras</u>, the court on April 16, 2019, issued the following order:

Having considered the brief and reply brief filed by the defendant, Wilmy Taveras, the brief filed by the State, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case.  See Sup. Ct. R. 18(1).  We affirm.

The defendant was convicted by a jury of two felony charges:  (1) conspiracy to sell a controlled drug; and (2) being an accomplice to possession of a controlled drug with intent to distribute.  See RSA 318-B:2, I (2017), :26, I(b)(4) (Supp. 2018); RSA 626:8 (2016); RSA 629:3, I (2016).  On appeal, he argues that the Superior Court (Temple, J.) erred by denying his pretrial motion to suppress text messages gleaned from a search of a Kyocera cell phone, which was conducted pursuant to a warrant.  The defendant contends that the warrant, which sought data stored on a Kyocera cell phone that, on January 28, 2016, was using a certain cell phone number, failed to satisfy the constitutional mandate of particularity.  The data sought by the warrant included "all phone call logs, call and text message details (to include content), sender and/or recipient phone numbers and any names associated with those numbers listed and stored in the contact database."

The State counters that the defendant's argument is based upon the mistaken premise that the warrant was "meant to cover only evidence of a single drug transaction between known parties."  The State contends that, in fact, the affidavit affixed to the warrant "established probable cause to search for evidence of illegal drug activity that occurred over a much broader span of time and involved a much broader group of individuals."  Alternatively, the State asserts that any error was harmless.  The defendant responds that while the affidavit established probable cause to search the cell phone for evidence of a crime that occurred on January 27 and January 28, 2016, it did not establish probable cause to search the phone for evidence of crimes on other dates.

We need not determine whether the trial court erred by denying the defendant's motion to suppress, because we agree with the State that the error, if any, was harmless.  See State v. Edic, 169 N.H. 580, 588 (2017).  The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on

the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.  Id.  To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict.  State v. Peters, 162 N.H. 30, 36 (2011).  This standard applies to both the erroneous admission and exclusion of evidence.  Id.  An error may be established to be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt.  Id.  In making this determination, we consider the alternative evidence presented at trial as well as the character of the erroneously admitted or excluded evidence itself.  Id.

As to the defendant's conviction for conspiracy to sell a controlled drug, such a conviction requires the State to prove, beyond a reasonable doubt, that the defendant, with a purpose that the crime of selling the controlled drug be committed, agreed "with one or more persons to commit or cause the commission of such crime, and an overt act [was] committed by one of the conspirators in furtherance of the conspiracy."  RSA 629:3, I.  The conspiracy indictment alleged that the defendant, "with the purpose that the crime of Sale of [a] Controlled Drug be committed, did agree with Jose Martinez and Alex Diaz to cause the commission of such crime by arranging the sale of what he purported to be 100 grams of heroin in exchange for US currency . . . and Jose Martinez provided transportation to Milford while Alex Diaz acted as a lookout, said actions constituted overt acts in furtherance of the conspiracy."

To find a defendant guilty of criminal conspiracy, the jury must find that he agreed — even tacitly — to bring about each element of the underlying offense.  State v. Rodriguez, 164 N.H. 800, 812 (2013).  "[M]ere presence or awareness is insufficient."  Id. (quotation omitted).  Rather, "[t]here must be some knowing participation in the conspiracy with a view to the furtherance of the common design or purpose."  Id. (quotation omitted).

As to the defendant's conviction for being an accomplice to possession of a controlled drug with the intent to distribute, the indictment alleged that the defendant "while acting in concert with Jose Martinez and/or Alex Diaz did knowingly have in his possession, custody or under his control without authorization," more than one ounce of fentanyl, with the intent to sell or distribute it.  To convict the defendant of being an accomplice to that charge, the State had to prove, beyond a reasonable doubt, that:  (1) he had the purpose to make the crime succeed; (2) he solicited, agreed, aided or attempted to aid another in planning or committing the offense; and (3) he shared the requisite mental state for the offense, which is "knowingly."  See RSA 626:8, III(a); see also Rodriguez, 164 N.H. at 811.

2

The alternative evidence of the defendant's guilt included the following. In late January 2016, the police were working with a confidential informant regarding heroin distribution in Milford. The confidential informant gave the police the name, telephone number, description, and residence of his heroin source.

On January 28, the police gave the confidential informant a cell phone and directed him to use it to arrange with his heroin source the purchase of approximately "ten fingers" of heroin for $3,200. According to the plan, the heroin source was to bring "ten fingers" of suspected heroin to a trailer park in Milford. The police directed the confidential informant to wait at a picnic table at the trailer park and to stand up when his heroin source arrived.

At approximately 3:55 p.m., a silver Nissan with Massachusetts plates pulled into the trailer park, and, when it approached the picnic table, the confidential informant stood up. When police approached the vehicle, the vehicle accelerated at a high rate of speed backwards out of the trailer park and into traffic. The police pursued the vehicle. At some point, when the vehicle was stopped in a turn lane, the pursuing officers approached the vehicle on foot and removed and handcuffed its occupants.

The three occupants of the vehicle were: Jose Martinez, who was driving the vehicle; Alex Diaz, who sat in the front passenger seat; and the defendant, who sat in the rear of the vehicle. The officers observed a Kyocera cell phone on the back seat of the vehicle. Following Martinez's arrest, the officers found a Samsung cell phone on his person. The police subsequently searched the vehicle pursuant to a warrant and found 83.7 grams of fentanyl hidden under the passenger's side of the gear shift lever in the center console.

Once the vehicle was towed to the police station, a police officer used the cell phone that had been given to the confidential informant to dial the cell phone number for the informant's heroin source. When that number was dialed, the Kyocera cell phone on the back seat of the vehicle rang. The police then searched the Samsung cell phone pursuant to a warrant and discovered that it contained text messages to and from the Kyocera cell phone coinciding with the day and time of the planned drug sale to the confidential informant. They also discovered that the Kyocera cell phone number was listed in the Samsung as belonging to the defendant.

The text messages between the defendant's cell phone (the Kyocera) and Martinez's cell phone (the Samsung) that were found on the Samsung reveal that the defendant coordinated the transaction on January 28. Thus, even without the text messages found on the Kyocera, there was overwhelming evidence that the defendant, acting with the requisite intent, agreed with Martinez to conduct the drug transaction at issue and that he and Martinez, committed numerous overt acts to further the conspiracy. Specifically, there

3

was overwhelming evidence that: (1) the defendant was the confidential informant's heroin source; (2) the defendant asked Martinez to accompany him to deliver the drugs to the informant; (3) Martinez agreed to accompany the defendant; and (4) Martinez drove the vehicle that contained the drugs. Similarly, even without the Kyocera text messages, there was overwhelming evidence that the defendant knowingly solicited, aided or attempted to aid Martinez in possessing the fentanyl found in the vehicle.

Compared to that evidence, the text messages found on the Kyocera were merely cumulative with respect to the evidence of the defendant's guilt as to the conspiracy charge. The text messages found on the Kyocera show that, in addition to agreeing to transport the drugs to Milford, Martinez also agreed with the defendant to supply the fentanyl for the sale. However, to convict the defendant of conspiracy, the jury did not have to find more than one agreement between the defendant and Martinez.

As to the accomplice to possession charge, even without the Kyocera text messages, there was overwhelming evidence that the defendant knowingly solicited, aided or attempted to aid Martinez in planning or committing the offense of possessing a controlled drug with intent to distribute it. Specifically, there was overwhelming evidence that: (1) the defendant agreed to sell "10 fingers" of heroin to the confidential informant in exchange for $3,200; (2) the defendant agreed to transport controlled drugs to Milford in a vehicle driven by Martinez; and (3) the vehicle contained 83.7 grams of fentanyl. The Kyocera text messages were merely cumulative as to the evidence of the defendant's guilt as to the accomplice to possession with intent to distribute charge. Those messages show that, in addition to agreeing with the confidential informant to sell heroin to the informant, the defendant also agreed with Martinez to buy the drugs from Martinez.

When considered in relation to the strength of the State's evidence of guilt, the text messages the State sought to introduce were cumulative. See Peters, 162 N.H. at 38. We conclude, therefore, that State has proved beyond a reasonable doubt that the error, if any, did not affect the verdict. See id. at 36.

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,
Clerk**

4